**Twyla STRONG and Glen Hampton, Appellants,**

v.

**FIRST NATIONWIDE MORTGAGE CORPORATION; Jack Roberts; Teresa Roberts; and Mgm Collection Agency Appellees.**

No. 96–CA–001032–MR.

Court of Appeals of Kentucky.

Jan. 30, 1998.

Mark D. Knight, Somerset, for Appellants.

Mary Latta Lee, Manchester, for Teresa Roberts.

Before GUIDUGLI, JOHNSON and SCHRODER, JJ.

*OPINION*

JOHNSON, Judge.

Twyla Strong (Strong) and Glen Hampton (Hampton) appeal from the final judgment of the Laurel Circuit Court entered on March 12, 1996, which determined the rights of the parties to the proceeds of the sale of certain real property. We affirm in part, reverse in part, and remand.

Jack Roberts (Jack) and Teresa Roberts (Teresa) were married to each other on March 13, 1986. During the marriage they resided at 658 Mitchell Creek Road in Laurel

County, the property at issue in this foreclosure proceeding. From 1988 until 1993, Jack and Teresa operated a body shop. Jack was also engaged in illegal activity in the repair and restoration of vehicles. On February 3, 1994, Jack was indicted by a federal grand jury on charges of knowingly operating a "chop shop" in violation of 18 U.S.C. § 2322(a), criminal conspiracy and threatening and intimidating a witness. He ultimately pled guilty to criminal conspiracy to own, operate, maintain, or control a "chop shop." In addition to being sentenced to serve a forty-one (41) month term of imprisonment, Jack was ordered to make restitution in an amount exceeding $241,000 to various individuals and entities, including Strong and Hampton.

On March 30, 1993, prior to his indictment, Jack filed for a dissolution of his marriage to Teresa. After the petition for dissolution was filed, Strong and Hampton filed actions against Jack in the Laurel Circuit Court. Both Strong and Hampton had purchased vehicles from Jack which contained parts from stolen vehicles. After these suits were filed, Teresa recorded her notice of lis pendens in the Laurel County Court.[1] Strong and Hampton obtained summary judgments against Jack[2] and each filed a judgment lien on the real estate at issue: Strong's was filed on May 10, 1994, and Hampton's was filed on September 9, 1994.

Thereafter, on January 4, 1995, a decree dissolving the Robertses' marriage was entered, in which Teresa was awarded a one-half undivided interest in the Mitchell Creek Road property. She was also awarded a 1991 Mercedes automobile worth $18,000, a 1989 Chevrolet Blazer, household goods and approximately $32,000 in cash to equalize the distribution of personal property and business inventory awarded to Jack. The decree

1. The notice read:
   Comes Teresa Roberts and hereby gives notice that she and Jack Roberts are in litigation in Laurel Circuit Court in Civil Action No. 93–CI–191, styled Jack Roberts, Petitioner vs. Teresa Roberts, Respondent. This action is one for a dissolution of marriage and will require that the Court make a division of assets of the parties. The primary asset of the parties is the marital residence and this is property that is in the name of Jack Roberts and which

was acquired by him by deed from Noah and Emma Lewis by deed dated 1983 which is of record in Deed Book 311 at page 831, records of the Laurel County Court Clerk's office.

2. Summary judgment in favor of Strong was entered on April 29, 1994, in the amount of $17,687.40, plus interest. Summary judgment in favor of Hampton was entered on August 9, 1994, in the amount of $13,195, plus interest.

also provided that Teresa would have a lien against all the property awarded Jack to protect the amounts awarded her in the decree.

This foreclosure suit was commenced on July 27, 1995, by the appellee, First Nationwide Mortgage Corporation (the bank). The complaint alleged that Jack was in default on the note executed in 1983 in the sum of $7,767.40. In her answer and cross-claim against the other creditors named in the complaint, Teresa stated that she was the owner of a one-half undivided interest in the property and "as a result thereof is entitled to one half of [the] net proceeds from the sale of the property concerned herewith only after payment of expenses of sale, the claim of [the bank] and any unpaid property taxes."

On December 2, 1995, the trial court entered a judgment and order of sale in favor of the bank. Teresa then moved for an order establishing the priority of creditors. In its order of January 17, 1996, the trial court found that the bank had the superior claim and that Teresa had "second priority as a creditor pursuant to the partial Judgment findings issued by the Laurel Circuit Court, Division II, on August 29, 1994, ordering that she is the owner of a one-half (1/2) undivided interest of the real estate in question." The property appraised for a value of $43,000. Teresa purchased the property for $40,000. On March 12, 1996, the trial court entered its order approving the Commissioner's report of the sale and ordering that Teresa pay only the amount owed the bank and the cost of sale as "sums due the first creditor and her as the second creditor exceed the sales price."

In this appeal, Strong and Hampton argue that the trial court erred in establishing the priority of the creditors of Jack Roberts. We agree that Teresa was not entitled to the entire proceeds realized from the sale of the property. However, we do not agree with the appellants' contention that "[e]quity demands" that they have priority over "any claim of Teresa Roberts."

It is abundantly clear to this Court that Teresa is entitled to one-half of the proceeds of the sale of the realty because of the determination in the dissolution proceedings that she had a one-half ownership interest in the property—not a mere lien. The trial court had the duty, in the dissolution action, to divide the marital property in "just proportions," regardless of how the property was titled. Kentucky Revised Statutes (KRS) 403.190. To protect her equitable interest in the property, Teresa filed the lis pendens and those who obtained a lien in the property after the filing of that notice, including Strong and Hampton, did so "subject to the results of the litigation." *Cumberland Lumber Company v. First and Farmers Bank of Somerset, Inc.*, Ky.App., 838 S.W.2d 403, 405 (1992). Significantly, the trial court did not determine that the debts to Strong and Hampton constituted marital debts. Indeed, the trial court specifically provided that Teresa would not be liable for these debts.[3] Thus, Teresa's ownership interest is not affected by any claims of Jack's creditors in the property. Stated differently, the liens of Strong and Hampton were extinguished to the extent of the interest awarded to Teresa in the dissolution. Again, as *Cumberland Lumber* indicates, "a pendente lite lienholder can have no greater interest in the property at issue than that of his debtor." *Id.* at 406.

We agree, however, with the appellants' argument that the trial court erred in establishing the priority of the liens on the proceeds of the sale relating to Jack's undivided one-half interest in the property. They have cited us to *Leonard v. Farmers & Traders Bank, Shelbyville*, Ky.App., 605 S.W.2d 770 (1980), which holds:

> We also affirm the decision of the trial court in regard to the effect of filing a lis pendens. K.R.S. 382.440, providing for the lis pendens notice, states basically that no action concerning the title, possession, or use of any real property shall affect the right or interest of a subsequent purchaser of said property unless notice of the action is filed in the office of the county clerk of

3. The decree provides: "It is accordingly the finding of this Court that any judgments which may be rendered against Jack Roberts as a result of his illegal activity or any costs or expense that he shall incur shall be born by him solely and individually."

the county in which the property lies. This section was enacted to protect the subsequent bona fide purchaser of the property. *Blackerby v. Monarch Equipment*, Ky., 259 S.W.2d 683 (1953). The statute does not purport to create any additional rights that a party might have in the property. The lis pendens filed by the appellant did no more than give notice of its claim against the Gravett's Liquor Store property. *It did not, independently, create a lien against said property.*

*Id.* at 772 (emphasis added).

■ We agree that there is nothing in KRS 382.440 constituting or creating a lien. Thus, Teresa's lien on Jack's one-half interest in the property arose at the time of the entry of the dissolution decree, a date after the Strong and Hampton liens were already in place.

■ The trial court obviously recognized that Strong's and Hampton's liens were superior to Teresa's, but adjusted the priority of the liens on the ground that Jack delayed the divorce because of the pending criminal matter. While it is apparent that the divorce proceeding lasted some twenty-one months, there is no evidence in this record to support the finding that Jack delayed the proceedings, nor certainly any allegation that he delayed them to protect his creditors. In any event, the trial court did not cite any authority for giving Teresa's lien preference over those perfected before hers, nor has she cited any authority in her brief. As *Leonard* holds, KRS 382.440 is not intended to establish priority among creditors, but to give notice to subsequent purchasers of a cloud on the title and to warn creditors of the need to seek other sources of security for their debts. The filing of a notice of lis pendens, does not, in our opinion, affect the priority of a security interest. Accordingly, as the judgment liens of Strong and Hampton were recorded before Teresa's judgment, they should have been given priority. *Cf.* KRS 355.9–312(5)(a).

The judgment of the Laurel Circuit Court is affirmed in part, and reversed in part and this matter is remanded for further proceedings consistent with this Opinion.

All concur.