**REDONDO CONSTRUCTION CORPORATION, Plaintiff–Appellant,**

v.

**UNITED STATES of America; Internal Revenue Service; UHL Truck Sales of Kentuckiana, Inc.; Modern Concrete Supply Company; Norman Greer, d/b/a Greer Construction Company; Harry B. Greer, d/b/a Greer Construction Company; Stout's Feed Store, Inc.; Irvin T. Diemer; Cecelia Diemer; North County Breaker Rentals, Inc., Defendants–Appellees.**

No. 96–6741.

United States Court of Appeals, Sixth Circuit.

Argued April 21, 1998.

Decided Oct. 15, 1998.

B. Keefe Montgomery (briefed), Louisville, KY, Stuart A. Weinstein–Bacal (argued), Indiano, William & Weinstein–Bacal, San Juan, PR, for Plaintiff–Appellant.

David English Carmack (briefed), John A. Dudeck, Jr. (argued and briefed), U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for Defendants–Appellees.

Before: KENNEDY and BATCHELDER, Circuit Judges; HULL,* District Judge.

BATCHELDER, Circuit Judge.

Plaintiff–Appellant Redondo Construction Corporation ("Redondo"), a Puerto Rican corporation, filed suit in the Bullitt Circuit Court of Kentucky seeking (1) to enjoin a seizure and intended sale by the Internal Revenue Service ("IRS") of property formerly owned by Theresa Hiter; (2) to determine lien priorities; (3) to quiet title; and (4) to collect damages for the IRS's allegedly unlawful and tortious conduct. The IRS removed the case to the Western District of Kentucky, and Redondo and the IRS both filed motions for summary judgment. The district court determined that the IRS liens had priority, and consequently granted the IRS's motion for summary judgment, denied Redondo's motion, and declared that Redondo's damages claim was moot.[1] The district court subsequently denied Redondo's motion to reconsider, and Redondo now appeals. For the reasons that follow, we AFFIRM the judgment of the district court.

**I.**

In November 1991, United States District Court of Puerto Rico awarded Redondo a civil judgment against Theresa Hiter and a number of other defendants. This judgment, as amended in January 1992, was in the amount of $415,134.14, plus interest, costs, and attorney's fees; the defendants, including Hiter, were made jointly and severally liable.

Redondo's present dispute with the IRS surfaced during its attempt to collect this judgment. At the time of the Puerto Rican judgment, Theresa Hiter owned real property, located in Bullitt County, Kentucky ("Property"); shortly after the judgment, Hiter transferred title of the Property to her mother, Fern Hiter. On December 6, 1993, Redondo filed a complaint with the Bullitt Circuit Court that (1) stated that on a date unspecified, Redondo had filed and registered copies of the Puerto Rican judgment with the "Clerk of the Court" in accordance with the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), KY.REV.STAT. ANN. § 426.950 *et seq.* (Banks–Baldwin 1994),[2] and was therefore entitled to Ken-

---

\* The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. On January 15, 1996, the district court signed an order staying the sale of the Property pending Redondo's appeal to this Court.

2. As the IRS notes, Redondo has not provided record-support for this claim: neither the Puerto Rican judgment itself nor the Certification of Judgment by the Puerto Rican district court contains a date stamp showing receipt by the Bullitt Circuit Court Clerk's Office, although for some undisclosed reason the *original* Puerto Rican Judgment contains a September 29, 1995, date stamp from the Bullitt County Clerk's Office. Because copies of these documents were filed as Exhibits A–D to the December 6, 1993, complaint, and because the state court ultimately decreed that the Puerto Rican judgment was entitled to full faith and credit pursuant to the UEFJA, which would have required these documents to have been properly filed, we will assume that Redondo properly filed the documents with the Bullitt Circuit Court.

tucky's full faith and credit; (2) sought to void the transfer as fraudulent; and (3) requested that the Property be "applied" to the payment of Redondo's judgment. On December 14, 1993, Redondo filed with the Bullitt County Clerk a *lis pendens* notice that specifically described the Property and stated that Redondo had filed a claim in the Bullitt Circuit Court that "affects the right, title and interest of Fern P. Hiter and Theresa A. Hiter" to the Property. In its brief on appeal, Redondo states that this *lis pendens* notice was served upon Theresa Hiter, but Redondo has failed to provide any record-support for this assertion.

On August 3, 1994, the IRS filed with the Bullitt County Clerk a federal tax lien against the Property in the amount of $157,-313.85, seeking to recover back taxes owed by Teresa Hiter. On October 17, 1994, the IRS filed another lien on the Property in the amount of $114,266.93, seeking payment of additional back taxes.

On October 18, 1994, the Bullitt Circuit Court voided the transfer of the Property to Fern Hiter and revested title in Theresa Hiter. On November 21, 1994, the Bullitt Circuit Court entered an order formally affording Redondo's Puerto Rican judgment full faith and credit by Kentucky ("Full Faith and Credit Order") and ordering that the property be sold after priority determinations were made. Almost a year later, on September 28, 1995, the Bullitt Circuit Court entered another order, this time granting the Full Faith and Credit Order retroactive effect to December 13, 1993 ("Nunc Pro Tunc Order"), the date Redondo had filed the *lis pendens* notice. On September 29, 1995, Redondo filed with the Bullitt County Clerk a Notice of Judgment Lien against the Property, which included a certification stating that a copy of the Notice had been mailed to Theresa Hiter.

Meanwhile, on November 29, 1994, Theresa Hiter had filed for bankruptcy; Redondo filed two adversary proceedings in the bankruptcy case. In settlement of the bankruptcy proceeding, on October 21, 1995, Redondo received the Property, subject to the liens noted in the settlement agreement. Al-

though it appears that the bankruptcy court originally determined that the IRS liens were junior to Redondo's interest, the court apparently withdrew that decision *sua sponte* on September 25, 1995. In April 1996, the IRS notified Redondo that it was seizing the Property, and in response, Redondo filed the present suit.[3]

The district court concluded that Redondo's lien on the Property did not attach until September 29, 1995, the date that Redondo filed the Notice of Judgment Lien with the Bullitt County Clerk. The court further concluded that under Kentucky law, one cannot assert a lien on real estate until one has first obtained a final judgment actually issued by a Kentucky court, as opposed to an out-of-state court. Thus, according to the district court, even with the Nunc Pro Tunc Order, at best, the judgment lien would be retroactive to November 21, 1994, the date that the Kentucky court issued the Full Faith and Credit Order.

## II.

■ Section 6321 of the Internal Revenue Code creates a statutory lien against all property and rights to property belonging to a delinquent tax payer. 26 U.S.C.A. § 6321 (West 1989 & Supp.1998). The lien arises at the time of assessment and attaches to all after-acquired property, 26 U.S.C.A. § 6322; *United States v. McDermott,* 507 U.S. 447, 452–55, 113 S.Ct. 1526, 1529–31, 123 L.Ed.2d 128 (1993); *Glass City Bank of Jeanette v. United States,* 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945); *United States v. Dishman Indep. Oil, Inc.,* 46 F.3d 523, 525 (6th Cir.1995), but is valid against a "judgment lien creditor" only after the IRS files the appropriate notice, *see* 26 U.S.C.A. § 6323(a), (f). The federal rule is first in time, first in right: a properly filed federal tax lien has priority over a competing state-created lien unless the competing lien has "attached" to the property in question and is "choate" prior to the perfection of the federal tax lien. *See United States v. City of New Britain,* 347 U.S. 81, 86, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); *United States v. Security*

---

**3.** Redondo acknowledges that the defendants other than the IRS named in this lawsuit have liens in the amount of approximately $36,000 that are prior to Redondo's judgment lien.

*Trust & Sav. Bank of San Diego,* 340 U.S. 47, 51, 71 S.Ct. 111, 113–14, 95 L.Ed. 53 (1950); *S & S Gasket Co. v. United States,* 635 F.2d 568, 570 (6th Cir.1980).

■ The primary issue in this case is not the usual question of choateness, but rather one of simple attachment, *i.e.,* had Redondo's judgment attached to the Property and created a state judgment lien before the IRS noticed its tax lien?[4] Under Kentucky law, a Kentucky judgment acts as a lien against and attaches to real property situated in Kentucky as soon as the judgment creditor complies with the statutory requirements of KY.REV.STAT. ANN. § 426.720 (Banks–Baldwin 1994). That section provides:

> A final judgment for the recovery of money or costs in the courts of record in this Commonwealth, whether state or federal, shall act as a lien upon all real estate in which the judgment debtor has any ownership interest, in any county in which the following *first shall be done:*
>
> (1) The judgment creditor or his counsel *shall file* with the county clerk of any county *a notice of judgment lien containing the court of record entering the judgment, the civil action number of the suit in which the judgment was entered, and the amount of the judgment, including principal, interest rate, court costs, and any attorney fees;*
>
> (2) The county clerk shall enter the notice in the lis pendens records in that office, and shall so note the entry upon the original of the notice;

> (3) The judgment creditor or his counsel *shall* send to the last known address of the judgment debtor ... or shall deliver to the debtor personally, a copy of the notice of judgment lien, *which notice shall include the text of KRS 427.060* [5] *and also the following notice, or language substantially similar:*
>
>> "Notice to Judgment Debtor. You may be entitled to an exemption under KRS 427.060, reprinted below. If you believe you are entitled to assert an exemption, seek legal advice."; and
>
> (4) The judgment creditor or his counsel *shall certify on the notice of judgment lien that a copy thereof has been mailed to the judgment debtor* in compliance with subsection (3) of this section.

KY.REV.STAT. ANN. § 426.720 (Banks–Baldwin 1994) (emphasis added). Thus, before any Kentucky judgment will operate as a lien and attach to Kentucky property, the judgment holder must comply with the steps required by § 426.720.

Redondo attempts to create *post hoc* justifications for its failure to follow the § 426.720 procedures. The statute clearly spells out the necessary steps. Rather than follow these steps, Redondo filed a *lis pendens* notice.

**A.**

■ Redondo now argues that in December 1993, it could not follow the requirements

---

**4.** Redondo expends considerable energy arguing that its "judgment lien" became choate when Redondo filed the *lis pendens* notice because "the identity of the lienor, the property subject to the lien, and the amount of the lien" were established. *See United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 89, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963) (quoting *City of New Britain,* 347 U.S. at 84, 74 S.Ct. at 369). It is true that federal law governs the question of when a state-created lien has acquired sufficient substance to be considered perfected or "choate" such that it will defeat a federal tax lien. *See id.* at 88–89, 74 S.Ct. 367, 83 S.Ct. at 1655; *City of New Britain,* 347 U.S. at 84, 74 S.Ct. at 369; *S & S Gasket,* 635 F.2d at 570. This of course assumes that a state lien has in fact been created. Redondo attempts to turn the federal choateness test into a substitute for securing attachment under state law. But to create a state lien, a judgment creditor must first do that which is required under state

law to cause a judgment to attach to property. *Cf.* Treas. Reg. § 301.6323(h)–1(g) (1997) (defining the term "judgment lien creditor" and stating in pertinent part: "If recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property, a judgment lien under such local law is not perfected with respect to real property until the time of such recordation or docketing."). Failing this, the choateness inquiry does not come into play.

Thus, Redondo's reliance on *In re Fornabai,* 227 F.Supp. 928 (D.N.J.1964), is misplaced. In that case, unlike the present case, under New Jersey's law, the judgment creditor already had a lien against the property; the question presented was merely whether the creditor had to be in the process of enforcing it in order to have priority.

**5.** KRS 427.060 covers homestead and burial plot exemptions.

of § 426.720 for providing notice of a judgment lien because despite the fact that its Puerto Rican judgment was entitled to full faith and credit, Redondo had not yet obtained an actual Kentucky judgment. In other words, Redondo now agrees with the district court's finding that in Kentucky, a judgment creditor must have in hand the order of a Kentucky court formally according full faith and credit to a foreign judgment before that foreign judgment is equivalent to a domestic judgment and before the creditor can avail itself of § 426.720.[6] Redondo did not obtain this order until November 1994— *after* the IRS noticed its tax liens. Redondo, however, asserts that its situation is exceptional: because it had already obtained a definite foreign judgment for which it was merely awaiting Kentucky's recognition, when the Nunc Pro Tunc Order converted that foreign judgment into a retroactively effective Kentucky judgment,[7] the *lis pendens* notice was thereby retroactively converted into a Notice of Judgment Lien against the Property because the *lis pendens* notice "substantially complied" with § 426.720's attachment requirements.

**6.** With respect to this issue, the IRS apparently adheres to the "heads I win, tails you lose" theory: it has taken the position that Redondo needs an actual Kentucky court judgment to avail itself of Kentucky's attachment procedures (and that Redondo therefore did not have an enforceable judgment until November 1994), and the directly opposite position that when Redondo registered its judgment in December 1993, that judgment "became a domestic judgment entitled to treatment in the same manner as a judgment of a Kentucky court."

**7.** We agree with Redondo to the extent that it argues that a nunc pro tunc order can retroactively recognize an out-of-state judgment for purposes of actually enforcing that judgment within the state's boundaries. In *Security Trust & Savings Bank*, which the IRS cites and where the Supreme Court held that a judgment cannot be related back to the earlier date of an attachment lien in order to defeat the priority of a federal tax lien, the Court was dealing with a *prejudgment* attachment where *no* judgment had been obtained. 340 U.S. at 48, 71 S.Ct. at 112; *see also United States v. Dishman Indep. Oil, Inc.*, 46 F.3d 523 (6th Cir.1995). This case involves an actual and definite judgment; thus, *Security Trust*'s relation back analysis does not control.

In *S & S Gasket Co. v. United States*, 635 F.2d 568 (6th Cir.1980) (*per curiam*), the holder of a

Redondo's theory is without merit. Pursuant to the UEFJA, KY.REV.STAT. ANN. § 426.950 *et seq.* (Banks–Baldwin 1994), Kentucky accords full faith and credit to foreign judgments that are registered in accordance with § 426.955. That section provides:

> A copy of any foreign judgment authenticated in accordance with the act of Congress or the statutes of this state may be filed in the office of the clerk of any court of competent jurisdiction of this state. The clerk *shall treat the foreign judgment in the same manner as a judgment of any court of this state. A judgment so filed has the same effect* and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying *as a judgment of a court of this state and may be enforced or satisfied in like manner.*

KY.REV.STAT. ANN. § 426.955 (emphasis added). At the time the judgment creditor files the foreign judgment, the creditor must also file with the court clerk an affidavit setting forth the name and last known address of the judgment debtor. KY.REV.STAT. ANN.

foreign judgment filed an action in the State of Tennessee seeking full faith and credit and to enforce the judgment. Prior to the recording of the federal tax lien, the judgment creditor requested and obtained a restraining order and a writ of attachment whereby the amount of the judgment was placed into a court registry. Subsequent to the recording of the federal tax lien, the Tennessee court decreed that the judgment was entitled to full faith and credit. In determining priorities, the Sixth Circuit panel only considered the choateness question, and held that the holder had a choate lien "once it had a valid judgment in a court of record for a definite amount of money which attached to the funds in issue." *Id.* at 571. Thus, the federal tax lien was defeated despite the fact that the creditor had not received full faith recognition at the time the federal lien was recorded.

Equity surely requires that a *nunc pro tunc* order be permitted to operate retroactively to turn a foreign judgment into a domestic judgment. If it were otherwise, a party who has obtained a definite monetary judgment that is constitutionally entitled to full faith and credit and who diligently seeks to cause the judgment to attach to property in another state would be required to suffer the consequences of the congested court docket of that other state. Nevertheless, a judgment alone does not create a lien; as we have repeatedly stated, attachment pursuant to state procedures is required.

§ 426.960. The clerk will then forward notice of the foreign judgment registration to the judgment debtor. *Id.*

■ The purpose of the UEFJA is to give the holder of a foreign judgment the same rights and remedies as holders of domestic judgments, and to make foreign judgments just as easy to enforce. *Fairbanks v. Large,* 957 S.W.2d 307, 308–09, 310 (Ky.Ct. App.1997).[8] The statutory language makes full faith and credit automatic upon proper registration. In defining the status of a foreign judgment, the statute says that upon proper registration, the clerk "shall treat the foreign judgment in the same manner as a judgment of any court of this state." There is no requirement that a Kentucky court rubberstamp the foreign judgment before Kentucky will recognize it as equivalent to a domestic judgment. Thus, we hold that upon proper registration, the holder of a foreign judgment has the equivalent of a Kentucky judgment and may proceed accordingly.

Although Kentucky's case law in this area is rather limited, there is some indication that before issuing an execution or other process for *actual enforcement* of a foreign judgment, a court will be called upon formally to accord the judgment full faith and credit. *See Sunrise Turquoise, Inc. v. Chemical Design Co.,* 899 S.W.2d 856, 859 (Ky.Ct.App. 1995) (in a collateral attack against the judgment's validity, discussing whether the trial court properly granted full faith and credit under the UEFJA and stating that the simplified process "eliminat[ed] the need for the court, where the registration is sought, from having to issue an *entirely new judgment*" (emphasis added)); *Fairbanks,* 957 S.W.2d at 308 (referring to the civil enforcement suit and the UEFJA registration, the appellate court states that the trial court consolidated the "two actions"). While the involvement of a Kentucky court may be necessary actually to execute a foreign judgment, given the statutory status, we see no reason why, after it registered the certified Puerto Rican judgment in December 1993, Redondo could not

have complied with the § 426.720 procedures for filing a Notice of Judgment Lien, and thereby caused a lien to attach against the Property. At most, in order to meet § 426.720's requirements Redondo's judgment lien notice would have had to supply, in addition to the civil action number and court of record that entered the judgment, the registration number and court where the foreign judgment had been filed.

■ We are left to decide whether, despite its failure actually to comply with § 426.720 before the IRS recorded its tax liens, Redondo sufficiently complied with § 426.720 so as to create a lien. If Redondo's compliance was not sufficient, its claim is subordinate to the federal tax liens because Redondo did not fully and properly comply with § 426.720's requirements until September 29, 1995, roughly one year after the IRS recorded its tax liens.

■ Section 426.720 requires a judgment creditor to take four steps in order to cause a judgment lien to attach to property: (1) file with the county clerk's office a notice of judgment lien that includes specified information; (2) have the clerk enter the notice in the county's *lis pendens* records; (3) serve on the debtor a copy of the notice that includes specific statutory language concerning the debtor's rights; and (4) certify on the notice of judgment lien that a copy has been delivered to the debtor. No Kentucky cases provide guidance as to what actions, short of perfect compliance, do or do not substantially satisfy § 426.720. It is clear, however, that under Kentucky law, a *lis pendens* notice cannot, independently, create a lien against property. *Strong v. First Nationwide Mortgage Corp.,* 959 S.W.2d 785, 788 (Ky.Ct.App. 1998) (KY.REV.STAT. ANN. § 382.440 is not intended to establish priority among creditors, but to give notice to subsequent purchasers of a cloud on title and to warn creditors of the need to seek other sources of security for their debt) (citing *Leonard v.*

---

**8.** Prior to Kentucky's enactment of the UEFJA, a judgment creditor seeking to enforce a foreign judgment in Kentucky needed to bring a separate civil action to enforce and obtain an actual Kentucky court judgment granting the foreign judgment full faith and credit. *See Fairbanks,* 957 S.W.2d at 308–10. Although a creditor may still choose to proceed with a civil enforcement action, the UEFJA provides a much simpler and more expeditious process to achieve the same result. *See id.* at 309–10 & n. 2; KY.REV.STAT. ANN. § 426.975.

*Farmers & Traders Bank*, 605 S.W.2d 770, 772 (Ky.Ct.App.1980)).

With little argument, Redondo states that because it served the *lis pendens* notice on Theresa Hiter, it has satisfied § 426.720's requirements for providing notice to the judgment debtor. KY.REV.STAT. ANN. § 426.720(3) & (4). Redondo further argues that the *lis pendens* put the IRS on notice of Redondo's registration of a final and unappealable federal court judgment, and therefore was sufficient to serve as notice of a judgment lien against the Property. According to Redondo, the IRS was aware of the identity of the lienor and the property subject to and the amount of the lien. Therefore, Redondo argues, it has satisfied § 426.720(1).

There are several problems with Redondo's arguments. As an initial matter, Redondo has failed to provide any proof that the *lis pendens* notice was ever served upon Theresa Hiter: there is no certification attached to the *lis pendens* stating that a copy of the *lis pendens* was mailed or otherwise delivered to Hiter, and nothing else indicates that Redondo did anything other than file the *lis pendens* with the Bullitt County Clerk's office. Even if we assume that Hiter had notice that Redondo was attempting to proceed against the Property to enforce the Puerto Rican judgment (because we (again) assume she received a copy of the December 6th complaint seeking to enforce the judgment), neither the *lis pendens* nor the December 6th complaint contained the statutory language required by § 426.720(3), which would inform Hiter of possible exemptions to which she might be entitled. Moreover, neither document contained the certification of service required by § 426.720(4). Such certification is an important component of creating a lien because it gives subsequent creditors/lienors notice that the requirement of notice to the judgment debtor has been met.

In addition, Redondo's *lis pendens* notice did not provide the information required by § 426.720(1). Although the notice identified the court and civil action number of Redondo's pending case, it failed in any way to indicate that Redondo already held a final judgment, as opposed to a contingent interest, and that the Kentucky action to obtain full faith and credit for the Puerto Rican judgment, *i.e.*, the action "affect[ing] the right, title and interest" of Theresa Hiter in the Property, was merely a formality. The Puerto Rican judgment was not filed along with the *lis pendens,* nor was it filed with the same entity.[9] In addition, the *lis pendens* notice did not include any reference to the amount of the judgment, and most certainly did not include a breakdown of the principal, the interest rate, court costs, or attorney's fees. *See* § 426.720(1). Without this information, a subsequent creditor cannot make an educated decision about whether to extend credit to the judgment debtor. Thus, we conclude that recitation of this information was vital to attachment.[10]

For the foregoing reasons, we find no merit to Redondo's claim that by filing a *lis pendens* notice it "substantially complied" with the requirements of § 426.720.

### B.

 In the alternative, Redondo claims that filing a Notice of Judgment Lien on December 6, 1993, when it filed its complaint and on December 14, 1993, when it filed the *lis pendens* notice, was legally and factually impossible because the Property was at that time titled in Fern Hiter, not in Theresa Hiter. Redondo argues that filing the lien would have improperly clouded title, been an ethical violation, and perpetrated a fraud upon the court and the county clerk. This argument is without merit and displays a misunderstanding of the different roles

---

**9.** The Puerto Rican judgment was filed with the Bullitt Circuit Court, while the *lis pendens* was filed with the Bullitt County Clerk.

**10.** Without citation, Redondo argues that the *lis pendens* notice imposed on the IRS a requirement to seek out the Bullitt Circuit Court case and determine whether a foreign judgment had been registered. We might be more sympathetic

if Redondo had at least indicated on the *lis pendens* that it actually had a final, albeit foreign, judgment. But absent such a notation, anyone looking at the *lis pendens* notice would merely assume that a contingent interest existed. So long as the IRS has complied with 26 U.S.C.A. § 6323(f), its federal tax lien trumps a contingent interest.

played by a *lis pendens* notice and a lien. A *lis pendens* notifies the world that pending litigation may affect the title to or someone's interest in a particular piece of property (and therefore persons should be wary when buying that property or using it to secure a loan). *See Strong v. First Nationwide Mortgage Corp.*, 959 S.W.2d 785, 788 (Ky.Ct.App. 1998) (KY.REV.STAT. ANN. § 382.440 is not intended to establish priority among creditors, but to give notice to subsequent purchasers of a cloud on title and to warn creditors of the need to seek other sources of security for their debt); *Leonard v. Farmers & Traders Bank*, 605 S.W.2d 770, 772 (Ky.Ct. App.1980) (Kentucky's *lis pendens* statute meant to protect *bona fide* purchaser); *cf.* KY.REV.STAT. ANN. § 382.440 (*lis pendens* requirements). A judgment lien, on the other hand, reserves a place in line for an entity holding a monetary judgment against a particular person to satisfy that judgment from the subsequent sale of any property belonging to the person against whom the judgment was obtained. Under § 426.720, a judgment lien does not attach to any one particular piece of property, but instead to "all real estate in which the judgment debtor has an ownership interest." Thus, filing a Notice of Judgment Lien cannot cloud title of a property that is currently owned by an individual other than the judgment debtor or perpetrate a fraud upon the court because the judgment will not attach to property in which the judgment debtor has no ownership interest.[11]

## CONCLUSION

Accordingly, the judgment of the district court is AFFIRMED.

---

**11.** Redondo also argues that the IRS liens could not have attached to the Property until it was returned to Theresa Hiter, *i.e.*, on October 18, 1994, and when the IRS recorded its liens on August 3, 1994, and Oct. 17, 1994, there was nothing to which the liens could attach. This argument is of course completely without merit since under *United States v. McDermott*, 507 U.S. 447, 453–54, 113 S.Ct. 1526, 1530, 123 L.Ed.2d 128 (1993), a federal tax lien is perfected from the date of its filing, regardless of when it actually attaches to the subject property, and the IRS has priority on all after-acquired property.