RENDERED: APRIL 29, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0956-MR

LINDSEY ANN YADEN PERKINS          APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE A. CHRISTINE WARD, JUDGE
ACTION NO. 15-CI-501398

CRAIG RANDALL PERKINS; CHAMBERS
PAINTING CO., LLC; AND PERKINS SCALE
CORPORATION          APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND MAZE, JUDGES.

CETRULO, JUDGE: This appeal arises out of a long and contentious action for

the dissolution of the marriage between Lindsey Ann Perkins (now Yaden)

("Lindsey") and Craig Randall Perkins ("Craig"), although the order, findings of

fact, conclusions of law, and decree of dissolution ("decree of dissolution") is not

on appeal. On appeal is (1) an amended order pertaining to LLC distributions

(entered as part of the dissolution action) and (2) the order denying Lindsey's motion to amend the above order. Lindsey argues that the findings of the Jefferson Circuit Court, Family Division Six, ("family court") are not supported by sound legal principles. We agree with Lindsey that the court below did have the authority to distribute the marital property under Kentucky Revised Statute ("KRS") 403.190 and therefore reverse the family court. We remand for entry of an order consistent with this Opinion.

## I.    BACKGROUND

Lindsey and Craig were married in November 2009 and separated in January 2015. Lindsey petitioned for dissolution of the marriage in May 2015. The decree of dissolution was entered April 23, 2020. That same day, the family court entered an order modifying October 16, 2018 order ("April 2020 Order").[1] Lindsey moved to amend that April 2020 Order, but the family court denied her motion. The April 2020 Order and the order denying Lindsey's motion to amend the April 2020 Order are the two matters on appeal.

At the onset of the dissolution action, Craig was employed by Perkins Scale Corporation ("PSC"). PSC is a Kentucky corporation formed in the 1970s

---

[1] The order on appeal is titled "Order Modifying October 16, 2018 Order" and was entered by the Jefferson Circuit Clerk on April 23, 2020. As such, the record refers to this order both as the "Order Modifying October 16, 2018 Order" and the "April 23, 2020 Order." While both are correct, for clarity, hereinafter we will refer to the order as the "April 2020 Order."

by Craig's parents, Larry Perkins and Ellena Perkins ("Larry" and "Ellena," respectively). In the late 2000s, Larry transferred control of PSC to his sons, Craig and Keith R. Perkins.[2] In a separate lawsuit,[3] Larry and Ellena attempted to regain control of PSC due to the "considerable losses in money, fees, clients, jobs and employees because of the wil[l]ful and wrongful acts which [Craig] and Keith R. Perkins, each aver against the other, including but not limited to allegations that each has appropriated Corporate funds and property to his own use . . . ."[4] In pertinent part, Craig failed to answer or otherwise respond to that civil action. A default judgment was entered against Craig on May 30, 2017, in the amount of $2,500,000 plus interest and $5,000,000 in punitive damages.

During the marriage, and while Craig was ostensibly in control of PSC, he formed a company with Lindsey's cousin, Michael Chambers ("Michael"). In January 2011, Craig and Michael formed Chambers Painting Company, LLC, and CM Property Group (collectively "Chambers").[5] Chambers

---

[2] The legalities of this transfer are contested, but not a matter before this Court because the issue was not adjudicated by the family court. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (stating "An appellate court is without authority to review issues not raised in or decided by the trial court.") (internal quotation marks and citations omitted).

[3] *Perkins, Larry v. Perkins Scale Corp.*, Jefferson Circuit Court Case No. 13-CI-004138.

[4] Quoting the amended complaint entered by order on October 30, 2013. *Perkins, Larry v. Perkins Scale Corp.*, Jefferson Circuit Court Case No. 13-CI-004138. This civil action between PSC, Larry, Ellena, Craig, and Keith was made part of the appellate record.

[5] The record refers to Chambers Painting Company, LLC and CM Property Group, LLC as both separate and joint entities. A distinction is not necessary for purposes of our review and this

was incorporated in Indiana. Craig and Michael each owned a 50% interest in Chambers.[6] It is Craig's interest in Chambers that is the crux of the orders on appeal.

In her brief, Lindsey calls the divorce "bitter, acrimonious, and contentious[.]" That is abundantly apparent from the record, and that animosity seemingly played a role in the long delay in the adjudication of this case. Approximately 16 months after divorce proceedings were initiated, the family court entered a status quo order restraining both parties from disposing of or transferring any property without leave of the court.[7] Apparently, Craig did not feel bound by that order.

According to Lindsey's brief, in the fall of 2018, "Lindsey discovered that Craig had received over $1,000,000 in distributions from Chambers during the pendency of the divorce, without her having any benefit or prior knowledge

---

Court shall refer to the corporations as the joint entity "Chambers." Our characterization does not reflect an opinion on the corporate status, but rather it is a simplification only for clarity in this Opinion.

[6] Craig's ownership interest in Chambers is contested but not an issue before this Court. *Ten Broeck Dupont, Inc.*, 283 S.W.3d at 734.

[7] The status quo order, entered July 27, 2016, stated, in pertinent part, "[e]xcept as shall be necessary to pay reasonable living expenses, neither party shall sell, encumber, gift, bequeath or in any manner transfer, convey or dissipate any property, cash, stocks or other assets currently in their possession or control of another person, company, legal entity or family member without an order of the Court or an agreed order signed by both parties or their attorneys."

thereof[.]"[8]  Thereafter, Lindsey moved the family court to require Chambers to pay directly to the Jefferson Circuit Court any further distributions due to Craig. The family court sustained the motion and entered its order on October 16, 2018. This order prevented Chambers from distributing additional funds to Craig, because Craig's assets were now subject to distribution in the dissolution.  In pertinent part, the October 16, 2018 Order provided, "IT IS HEREBY ORDERED AND AJUDGED that [Chambers] shall pay any distribution in which [Craig] has an interest to the Jefferson Circuit Court.  Further, in the event that a distribution is made to [Craig], it is to be paid directly into the Jefferson Circuit Court."

Shortly thereafter, Lindsey alleged that Craig was attempting to claim his interest in Chambers to be held by his paramour, Brittany Middleton.  As such, Lindsey motioned the family court to amend her petition to assert a claim of dissipation, which was granted and entered in December 2018.[9]  Lindsey further moved the family court to forbid Chambers from transferring any shares of ownership pending trial, which was likewise sustained by the family court and also entered in December 2018.

---

[8] Lindsey's estimate ultimately proved to be low; the parties later agreed that Craig (and/or his paramour) received more than $2,200,000 in distributions *after* the separation but *before* the Order of Settlement.

[9] In pertinent part, this order provides:  "IT IS HEREBY ORDERED AND ADJUDGED that [Chambers] shall not transfer any shares owned by [Craig] or [Lindsey] to any party, including Brittany Middleton, pending the trial of this matter.  Nor shall [Chambers] purchase any shares from any party to this divorce."

In January 2019, PSC filed suit in Clark County, Indiana Circuit Court.[10] Larry was effectively back in control of PSC by this time. Even though Craig's Chambers distributions were already ordered to be held by Kentucky's Jefferson Circuit Court, PSC attempted to claim ownership of Craig's interest in Chambers in Indiana. Specifically, this Indiana action was an attempt to domesticate and enforce the default judgment obtained against Craig, in the state where Chambers was incorporated (Indiana). PSC was successful, and the Indiana court entered its first charging order on March 13, 2019. In pertinent part, the first charging order states:

> **IT IS** . . . **ORDERED** by the Court that the interest of [Craig] as a member in [Chambers] and/or the interest of [Craig] in any other limited liability company, partnership or joint venture which he has an interest with [Michael] or anyone else be and the same is hereby subjected to an encumbrance and charging order in favor of and for the benefit of [PSC].

This first charging order also scheduled a show cause hearing for Craig to contest the payment of his Chambers' interest to PSC. After Craig failed to appear, the Clark County Circuit Court (Indiana) entered a second charging order in April 2019. This second charging order ("Continuing Charging Order") reiterated that Craig's interest in Chambers "is hereby subjected to an encumbrance

---

[10] *Perkins Scale Corporation v. Craig R. Perkins*, Clark County, Indiana, Circuit Court Case No. 10C01-1901-CC-000061.

and charging order in favor of and for the benefit of [PSC] . . . . **IT IS FURTHER ORDERED** by the Court that [Michael and Chambers] shall not transfer any assets of [Chambers] without the permission of this Court."

While the charging order action was beginning in Indiana, Lindsey and Craig's dissolution final hearings were beginning in Kentucky, four years after the parties separated.[11] The dissolution of marriage trial began in January 2019, with a second day in June 2019. When Lindsey and Craig returned to court in October 2019, the parties announced that they had reached an agreement. On October 16, 2019, Lindsey's counsel gave a detailed oral recitation of the agreement which was later memorialized in written form. Craig signed the agreement, but only after striking the indemnification language.[12] The family court reserved ruling on the indemnification clause and entered its order reflecting in court settlement ("Order of Settlement") on January 29, 2020.

A full discussion of the equitable distribution of marital assets in the decree of dissolution is not necessary for our analysis; the Chambers' distributions allocated in this order are the core issues on appeal. The Order of Settlement gave to Lindsey, as part of the equitable distribution of marital assets, ownership of

---

[11] During this four year period, the proceedings were in progress and included discovery, multiple depositions, and continuances.

[12] The removed language was a provision holding Lindsey harmless and indemnifying her from other legal actions involving Larry, PSC, or the Perkins Family Trust.

Craig's Chambers distributions (both those distributions held in the Jefferson Circuit Court and those yet to be disseminated). The distributions to Lindsey were intended to balance the $2,200,000 in Chambers distributions that Craig received after the initiation of the dissolution action. In pertinent part, the Order of Settlement states:

> a. [**Chambers**[13]]:
>
> [Lindsey] shall retain as her own all right, title and interest in the shares of [Chambers] presently subject to litigation in the Clark County Circuit Court No. 1, Indiana, action No. 10C01-1809-MI-000209. Both parties acknowledge that [Craig] has individually or through his girlfriend's company received dividend distributions from [Chambers] in excess of $2,200,000 (Two-Million Two Hundred Thousand Dollars) since the parties' separation. [Craig] further acknowledges that [Lindsey] received no part of those distributions. Accordingly, because the company is now being disbanded through judicial action, he has received his portion of the company. The remaining assets of [Chambers] therefor[e] belong to [Lindsey], as her marital portion, free and clear of any and all claims by [Craig]. [Craig] shall execute any necessary documents to effectuate the transfer of any interest he might have in the Company.
>
> b. **Funds Deposited in Jefferson Circuit Court Action No. 15-CI-501398**
>
> The parties acknowledge that certain funds have been deposited into the Circuit Court through this action. Both parties further acknowledge that those funds now exceed $600,000 (Six-Hundred Thousand Dollars). [Lindsey]

---

[13] This order refers only to Chambers Painting Company, LLC.

-8-

and [Craig] agree that all funds on deposit with the Circuit Court shall be [Lindsey's] marital distribution and become her own property in fee, free and clear of all claims by [Craig]. [Craig] further hereby agrees to immediate distribution of said funds to [Lindsey], in her sole name by this Court. Husband agrees that his prior distribution of over $2,000,000 from [Chambers] represent his marital cash distribution during the separation of the parties, and thus he willingly agrees to distribution to [Lindsey].

Also on January 29, 2020, Chambers moved[14] the family court to remand its order entered on October 16, 2018 (which had ordered Craig's distributions from Chambers to be paid into Jefferson Circuit Court). Chambers argued the family court's October 16, 2018 Order and the charging orders out of Indiana were conflicting. Then on February 7, 2020, PSC filed a response to Chambers' motion to remand, arguing that matters involving Chambers should be addressed only in Clark County, Indiana. Lindsey filed an objection and response.

On April 23, 2020, the family court entered (1) the decree of dissolution and (2) the April 2020 Order. The April 2020 Order states:

Although the 2018 Orders recognized that [Lindsey] likely had a claim in this dissolution action to [Craig's] membership interest in [Chambers] and prohibited [Craig] from accessing and/or dissipating any distributed funds, the Orders did not determine ownership or allocation of the funds to be deposited; they simply

---

[14] From our review of the record, it appears the family court permitted Chambers and PSC to file motions and to be heard at oral arguments despite not being intervening parties to the dissolution action. For consistency and clarity, we will refer to PSC and Chambers as "parties," but their party status is discussed in more detail below.

created a place for [safekeeping] the funds until a determination could be made. It was not until the Order of Settlement was entered January 29, 2020, that the property was designated to [Lindsey]. That means the Indiana [] Charging Orders predate this Court's determination of whether the property constituted a marital asset and to whom it should be allocated, making this case distinguishable from the case law cited by [Lindsey] in her brief.[15]

. . . .

As the Court concludes that the Charging Orders predate this Court's designation and allocation of marital property, the Court further concludes that the Indiana Charging Action, where all parties have made appearances, should be resolved prior to any further distributions in this action.

WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS: The Motion to Remand is denied, however, the October 2018 Order is modified to allow [Chambers] to withhold further payment until the Indiana claim is resolved.

Lindsey moved the family court to amend the April 2020 Order, but the family court denied her motion. On appeal, Lindsey contends the family court "misconstrued and misapplied the applicable law and committed reversible error" in amending its October 16, 2018 Order (via the April 2020 Order) and denying Lindsey's motion to amend the April 2020 Order. Pertinent facts will be added or repeated as necessary for analysis and/or clarification.

---

[15] *Strong v. First Nationwide Mortg. Corp.*, 959 S.W.2d 785 (Ky. App. 1998).

## II.    STANDARD OF REVIEW

The denial of a motion to alter, amend, or vacate is subject to the abuse of discretion standard.  *William C. Eriksen, P.S.C. v. Kentucky Farm Bureau Mut. Ins. Co.*, 336 S.W.3d 909, 911 (Ky. App. 2010).  *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 579 (Ky. 2009).  "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).  *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

## III.    JURISDICTIONAL MATTERS

First, we note that only PSC has filed a brief before this Court in response to the appeal filed by Lindsey.  In that brief, by a non-party, PSC argues "[a]s Lindsey pegs the superiority of her marital property claim to Craig's [Chambers] interests upon the October 2018 Order, the absence of [the family court's] personal jurisdiction over [Chambers] negates the efficacy of such Order." But, Chambers appeared numerous times before the family court for more than a year before first raising the lack of personal jurisdiction claim in January 2020. Therefore, Chambers waived personal jurisdiction when it appeared generally, rather than specifically, in the family court.  *Williams v. Indiana Refrigerator Lines, Inc.*, 612 S.W.2d 350, 351 (Ky. App. 1981).  *See also* Kentucky Rules of Civil Procedure ("CR") 12.02 and 12.08(1).

-11-

Second, we address PSC's party status. Lindsey argues[16] that PSC is not a party to this case or this appeal because PSC did not move to intervene in the underlying action, nor was such a request granted. But, PSC too was treated like a party in the lower court proceeding: (1) the family court allowed PSC to be heard at numerous oral arguments, (2) PSC filed numerous pleadings in the lower court, including motions pertaining to both orders on appeal, and (3) both orders on appeal specifically address PSC legal claims and motions. Additionally, Lindsey referred to PSC as an intervening party on the motion to amend the April 2020 Order and named PSC as an appellee. They did not move to dismiss and filed the only brief in response to the appeal.

KRS 403.150 sets out the procedures for commencing a divorce action and includes a general subsection that simply states that "[t]he court may join additional parties proper for the exercise of its authority to implement this chapter." KRS 403.150(6). Neither this Court nor the Kentucky Supreme Court have fully addressed the procedural mechanics necessary for a trial court to bring a non-party into a case. However, the Supreme Court has acknowledged the authority provided to trial courts in divorce proceedings by KRS 403.150(6). In *Lewis LP Gas, Inc. v. Lambert*, 113 S.W.3d 171, 173 n.1 (Ky. 2003), *overruled*

---

[16] While Lindsey argues PSC is not a proper party, she does so only in a footnote in her brief and does not give much emphasis to the argument.

*on other grounds by Hoskins v. Maricle*, 150 S.W.3d 1 (Ky. 2004), the Court noted that KRS 403.150(6) permits a trial court to "join additional parties proper for the exercise of its authority to implement this chapter." Furthermore, in *Medical Vision Group P.S.C. v. Philpot*, 261 S.W.3d 485, 491 (Ky. 2008), the Kentucky Supreme Court held that "given the facts and circumstances of this case, it would be proper for the trial court to join [Company 1] and [Company 2] under KRS 403.150(6) so that it could ensure that [the spouse] receives the property judgment to which she is entitled." We believe that reasoning is particularly true to the facts and circumstances of *this* case, considering that these entities have actively and voluntarily participated in the dissolution action throughout the years of litigation.

Further, no harm will result from considering PSC's brief and arguments in this appeal. Adversely, not allowing PSC to continue with this appeal could implicate due process concerns that can easily be avoided by addressing the arguments of all briefing parties, *i.e.*, Lindsey and PSC.

## IV. ANALYSIS

First and foremost, we must find the forest through the charging order trees. The convoluted facts become more clear after we clarify one simple point: *charging orders are liens.* KRS 275.260(3)[17] states a charging order "*constitutes a*

---

[17] The charging orders in question are Indiana charging orders, but because we are determining the *priority* of the charging orders, and not challenging the *validity* of the charging orders, we apply Kentucky law.

*lien* on and the right to receive distributions made with respect to the judgment debtor's limited liability company interest. A charging order does not of itself constitute an assignment of the limited liability company interest." (Emphasis added.)

In 2018, the family court ordered Craig's Chambers distributions to be held in Jefferson Circuit Court, and further entered a "status quo" order as to the sale or transfer of the Chambers' distributions. PSC argues that it is a judgment creditor of Craig and claims a superior priority over Lindsey's claim by way of its domesticated judgment (2017) and perfected charging orders (2019). PSC argues, and the family court ultimately agreed, that Lindsey's place in line was not held until the Order of Settlement (2020), *i.e.*, *after* PSC domesticated their Indiana charging orders in the dissolution action.

Looking specifically at the orders on appeal, the April 2020 Order found PSC had a superior claim to Craig's Chambers distributions over Lindsey. The second order on appeal, the order denying the motion to amend the April 2020 Order, is consistent with the April 2020 Order. The family court was unpersuaded by *Strong v. First Nationwide Mortgage Corporation*, 959 S.W.2d 785,[18] because

---

[18] Lindsey also cited to *Bank One, NA, v. Vaught*, No. 2001-CA-001662-MR, 2003 WL 21674759, at *15 (Ky. App. Jul. 18, 2003), but because that opinion is unpublished and unnecessary for our analysis, we will not discuss it.

*Strong* dealt with real property protected by a *lis pendens*, while here, we are discussing charging order liens. However, our reading of *Strong* does, in fact, align with Lindsey's argument. We conclude that the family court's decision failed to appreciate the difference in the *form* of the parties' interests *before* giving deference to timing: Lindsey's ownership interest has priority over the charging order liens because those were perfected after the *initiation* of the dissolution proceedings. [19] More recent precedent takes priority in our analysis and further supports Lindsey's claims. Our forest path is paved not with *Strong*, but with *Stone*. *Stone v. DuBarry*, 513 S.W.3d 325 (Ky. 2016).

In *Stone v. DuBarry*, our Kentucky Supreme Court elucidated on the various forms that liens can take, specifically statutory liens versus consensual/contractual liens. *Id*. Intermingling legal concepts applicable to the various types of liens is like "mixing apples and oranges." *Id.* at 329. *Stone* dealt with an attorney fee lien (a statutory lien), as opposed to a charging order lien (also a statutory lien), but the analysis is still clear and guiding.

> There is no debate that an attorney is entitled to be paid for the work he or she performed in accordance with the agreement of employment entered into with the client. These fees can be collected by direct order of a court where the statutes allow an award of attorney's fees, such

---

[19] "It is abundantly clear to this Court that [the wife] is entitled to one-half of the proceeds of the sale of the realty because of the determination in the dissolution proceedings that she had a one-half ownership interest in the property – not a mere **lien**." *Strong*, 959 S.W.2d at 787 (emphasis added).

as in a domestic-relations action; by suit to obtain fees earned under the employment contract; or by attachment of a lien under the employment contract. But an attorney may not file a lien under KRS 376.460 (the attorney's lien statute) and thereby attach money or property subject to division in a divorce action, because *the very property an attorney seeks to file a lien against is in fact the subject matter of the court's jurisdiction when it comes to property division. Allowing such a lien, entered into by only one party without notice to the spouse (and opposing party) thwarts the ability of the court to make a just division of property as is required by law.*

*Id.* at 329-30 (emphasis added).

Consistent with *Stone*, allowing PSC to recover part of the marital assets via a judgment and lien perfected *after* the initiation of the marriage dissolution would "thwart[] the ability of the court to make a just division of property." *Id.* at 330.

Additionally, the *Stone* Court discussed the *root* of the lien itself.

[A] key point to consider is that such a restriction on someone else's property [*i.e.*, a lien] can only be justified if the lienholder has some legitimate claim *against that very property*. That is the general nature of how liens work.

. . . .

In a domestic relations case. . . [w]hen it comes to *money or property* [*division*] . . . each spouse asks that his or her personal property be *assigned* to him or her, and that the joint marital property be *divided* in just proportions. KRS 403.190. All the property that will ever be subject to the divorce court's orders, or the right to obtain that property in the future, exists at that very point in time,

including any claims to the personal or marital estates that might be contested outside the divorce. For such contested claims, *whatever amount that is established outside the divorce action is also subject to assignment or division by the divorce court.*

. . . .

[I]f the [spouse's bank] account contains funds that were earned during the marriage, those funds are designated as marital, losing their separate status, and are subject to equitable division. This occurs by operation of law, and is not due to any effort of the attorney. While it may be that a highly skilled attorney succeeds in getting a larger share for his client, his work did not create the fund, and his client's right to claim against the fund upon filing for divorce is a contingency against that fund even during the marriage. This is established by statute, and not because the attorney established the propriety of allowing such a claim.

*Id.* at 330-32.

Stated another way, the attorney in *Stone* could not enforce his lien against the marital property because he did not have an interest in those specific assets; *i.e.*, his work did not create the marital assets. Here, the root of the lien against Craig is the $7.5 million judgment. The charging order liens extended that judgment lien to the LLC distributions, but the monetary award is the *root* of the lien. Again, a lien "can only be justified if the lienholder has some legitimate claim against that very property." *Id.* at 330. Even if we considered the charging orders as an avenue to somehow change the claim form (from monetary recovery to specific distribution recovery), we believe that the family court underestimated

-17-

its authority and ability to make distributions and orders that addressed the division of property and assets of the marriage throughout the lengthy proceedings. In short, the family court's status quo order alone entered in December of 2018 established that the assets at issue were within the jurisdiction of this Court and we conclude that the family court did have the authority to "assign" the subsequently presented lien. In essence, the court had already done so in an effort to equalize the division of assets upon being presented with the uncontested fact that Craig had received significant assets in violation of the status quo order.

"It is well-established that Kentucky encourages the amicable resolution of divorce actions via settlement agreements. *See Shraberg v. Shraberg*, 939 S.W.2d 330, 333 (Ky. 1997). However, a settlement agreement is subject to judicial scrutiny and will not be enforced when procured by fraud, bad faith, or a material misrepresentation." *Taylor v. Taylor*, No. 2009-CA-001902-MR, 2011 WL 4861802, at *3 (Ky. App. Oct. 14, 2011).

In her motion to amend the April 2020 Order, Lindsey argued:

> [Craig] and his father caused a default judgment to be entered against Craig while this [dissolution action] was pending. There have been absolutely no attempts by Craig's father to collect on that judgment other than through the charging order. While Craig has had other high value assets that could have been applied to the judgment, it was only after it became apparent that Lindsey could obtain the LLC distributions that the charging order was sought to prevent that. The attempted

-18-

effect is to have only Lindsey, not Craig, ever suffer financially for the default judgment against Craig.

There is certainly evidence in the record to support this contention. On June 12, 2019, PSC's legal counsel testified at the dissolution trial of Lindsey and Craig. Counsel testified that during civil litigation between Larry and Craig, the ownership interest in PSC stock was called into question. In relation to this ownership interest, counsel stated that Larry and Craig signed an agreed order because it was time to "wrap up the case." Counsel stated:

> I basically said, I'm going to file a motion for summary judgment on behalf of [PSC]; I'm gonna lay out the law . . . and Craig, you're going to be, have no response to this. The best course, to save the company money and my time and my effort, I would rather do it that way than have to bill the company unnecessarily for a win I know I'm going to get. Let's enter into an agreed order for everybody that says "I give up" basically.

Similarly, Craig did not appear at the show cause hearing for the Indiana charging order, in effect, helping PSC obtain those orders. Craig made no response in the civil litigation that resulted in the $7.5 million judgment against him, in favor of PSC. Before that judgment was entered, Larry was deposed. At that deposition in 2017, Larry stated "What is money anyway? What good does it do you personally? . . . Hundred years from now, think about it. Somebody will have every bit of it. . . . It won't be us . . . blood is thicker than water. It's that simple."

Lindsey also pointed out in her motion to amend the April 2020 Order, Craig's testimony at the 2017 contempt hearing. At that hearing, while the embezzlement litigation was still pending, Craig admitted that he borrowed money from his father to pay off his Mercedes. This contempt hearing was not the only one of its kind.

From our review of the record, we have reason to believe that Craig intentionally slowed the dissolution proceedings, possibly to enable his father to receive and domesticate the charging orders, in hopes of preventing Lindsey from receiving those distributions. In fact, we found ten motions to compel and/or motions for contempt in the dissolution action.[20] Additionally, Craig made at least five motions for continuance.[21] There was additional testimony that Craig misled the family court about a back surgery, arrived late on numerous occasions, and likely hindered the appearance of at least one subpoenaed witness (Brittany Middleton).

Furthermore, no harm results for PSC from their inability to recover Craig's distributions in Chambers. PSC still has a valid judgment against Craig and can choose to recover its judgment from the assets Craig retained *after* the

---

[20] November 10, 2015; April 5, 2016; September 18, 2016; January 3, 2017; January 31, 2017; June 13, 2017; November 6, 2017; May 13, 2019; December 26, 2019; December 27, 2019.

[21] February 23, 2016; December 19, 2017; May 1, 2018; August 29, 2018; January 22, 2019.

Order of Settlement. "[A] pendente lite lienholder can have no greater interest in the property at issue than that of his debtor." *Cumberland Lumber Co. v. First and Farmers Bank of Somerset, Inc.*, 838 S.W.2d 403, 406 (Ky. App. 1992). It is true that after the Order of Settlement, Craig had no ownership interest remaining in Chambers' distributions. Therefore, PSC has no Chambers distributions to claim from Craig. But, in the Order of Settlement, Craig *did* retain assets including, but not limited to, two homes and 77 acres of land in Hardinsburg, Kentucky. Also, that order stated that "[b]oth [Craig and Lindsey] acknowledge that [Craig] has individually or through his girlfriend's company received dividend distributions from [Chambers] in excess of $2,200,000 (Two-Million Two Hundred Thousand Dollars) since the parties' separation." If PSC chooses to enforce their judgment against Craig, it can do so from his remaining assets post-Order of Settlement.

Additionally, as should be apparent, the distributions that were held by the Jefferson Circuit Court and awarded to Lindsey as part of an equitable distribution of marital assets remain Lindsey's. PSC has no claim or lien on that financial distribution.

We deem all other arguments made by the parties to be redundant, irrelevant or unnecessary for a proper resolution of this appeal.

# V. CONCLUSION

In accordance with this Opinion, the Jefferson Circuit Court is REVERSED and the matter REMANDED with instructions to GRANT Lindsey's motion to amend the April 2020 Order giving Lindsey ownership interest, and superior claim over PSC, in Craig's Chambers distributions.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jesse A. Mudd
Stuart A. Scherer
Louisville, Kentucky

BRIEF FOR APPELLEE PERKINS
SCALE CORPORATION:

J. Gregory Troutman
Louisville, Kentucky