COMBS, JUDGE:
Brett Bailey appeals from the order of the Jefferson Circuit Court granting summary judgment to the Kentucky Lottery Corporation ("the lottery"). After our review, we affirm.
The lottery operates an internet website where individuals may register for an online account and participate in a program referred to as "Fun Club Rewards." A Fun Club Rewards member may register qualifying scratch-off tickets to enter the lottery's second-chance-to-win promotions. In its "$175,000 Stacks of Cash" game, the lottery operated a second-chance promotion whereby a scratch-off ticket that revealed an "FTP" ("Final Top Prize") symbol could be entered to win $175,000.00 in a drawing to be conducted in 2014.
Bailey uncovered an "FTP" symbol on a twenty-dollar, scratch-off lottery ticket that he purchased in May 2013. In July 2013, Bailey joined the lottery's Fun Club Rewards program and entered several eligible scratch-off tickets as chances to win the "Final Top Prize" promotion. He did so by providing information on the lottery's website and by agreeing to the terms of use and to all other rules and regulations that applied to online account holders.
The online account rules required Bailey to keep his mailing address, telephone number, and other contact information current. The promotion rules provided that "[i]f the winner cannot be reached by phone within a seven (7) business day time period, ... he or she will be disqualified, and the prize will be awarded to the first eligible alternate selected." The rules also provided that where "the entry is incomplete or does not comply in any other respect to the requirements set forth above, the entry will be disqualified." Bailey changed his telephone number in October 2013. He did not notify the lottery and never updated his Fun Club Rewards account to reflect his new telephone number. Bailey never provided the lottery with a correct mailing address.
As announced online, the "FTP" drawing was conducted on January 7, 2014. Bailey's ticket was drawn as the winner. However, the lottery could not reach Bailey at the only telephone number that he had provided in his online account.
*307 On January 8, 2014, the lottery's promotions coordinator, Janice Duvall, mailed a certified letter to Bailey at an address in Winter Haven, Florida. The correspondence explained that Bailey's "FTP" scratch-off ticket had been drawn as the winner in the lottery's Final Top Prize $175,000 Stacks of Cash game. Duvall explained that Bailey's ticket must be presented to and verified by the lottery. She asked Bailey to contact her and explained that if the lottery had not heard from him within seven business days from his receipt of the letter, his prize would be forfeited.
Bailey had not resided at the Florida address even when he registered for the Fun Club Rewards program in July 2013. Consequently, the certified letter was undeliverable. However, it was eventually forwarded by the post office to Garden City, Michigan, on January 21, 2014-well after expiration of the seven-business-day period provided for in the game's rules and after the lottery had determined that Bailey's entry was disqualified from the drawing.
Bailey telephoned the lottery immediately after he received Duvall's letter. The lottery told Bailey that he had become disqualified from the second-chance promotion because he could not be reached within seven business days of the drawing as required by the rules of the promotion. The lottery explained that it had already notified an eligible alternate that she was the prize winner. On January 22, 2014, Bailey drove from Michigan to the lottery's headquarters in Louisville to present his scratch-off ticket and to claim his prize. The lottery refused to accept the ticket, however, because it had already awarded the prize to another player.
On May 21, 2014, Bailey filed a civil action against the lottery. In relevant part, he contended that the language that Duvall had included in her correspondence had created a new contract that extended the seven-business-day period provided by the game's rules. He claimed that the lottery breached its new contract with him by denying him the prize money. Bailey also claimed that the lottery breached an implied covenant of good faith and fair dealing when it did not attempt to contact him by email. He also contended that the lottery was unjustly enriched by failing to pay the Top Final Prize money to him. In an amended complaint, Bailey alleged that the lottery had committed fraud and misrepresentation.
After a period of discovery, Bailey filed a motion for summary judgment with respect to his claim for breach of contract. In response, the lottery filed a cross-motion for summary judgment with respect to all of Bailey's claims. Following a hearing and a review of the parties' briefs, the circuit court granted the lottery's motion for summary judgment and dismissed Bailey's complaint. The trial court denied his subsequent motion to alter, amend, or vacate the judgment. This appeal followed.
When a trial court grants summary judgment, we must determine whether it erred in concluding that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. CR 1 56.03. In order to avoid summary judgment, the party opposing its entry must present at least some affirmative evidence to show that there exists a disputed issue of material fact to be resolved at trial. Lewis v. B & R Corp. , 56 S.W.3d 432 (Ky. App. 2001) (citing Steelvest v. Scansteel Serv. Ctr., Inc. , 807 S.W.2d 476 (Ky. 1991) ).
*308 First, Bailey argues that the trial court erred by granting summary judgment with respect to his claim for misrepresentation. We disagree.
In order to prove his claim of misrepresentation, Bailey had to show-by clear and convincing evidence-that the lottery made a material representation; that this representation was false; that the lottery knew that the representation was false or that it had made it recklessly; that the lottery induced him to act upon the misrepresentation; that he reasonably relied upon the misrepresentation; and that the misrepresentation caused him injury. See Flegles, Inc. v. TruServ Corp., 289 S.W.3d 544 (Ky. 2009). Bailey contends that the lottery misrepresented to its players-both in print on the back of the scratch-off lottery tickets and in language included on its website-that winners would have until June 30, 2014, to claim a prize.
However, Bailey cannot establish that the lottery made a false representation to him. Bailey's scratch-off ticket explained that ticket purchasers are bound by Kentucky law and by the official game rules, which are available from the lottery upon request. The lottery's website included a phrase indicating that the "Last Date to Claim" is June 30, 2014. This date marks the 180th day after the Stacks of Cash scratch-off game ended and is consistent with the website's language, which states: "You have 180 days from the game end date to claim a prize." The backside of the scratch-off ticket advised that tickets must be redeemed "WITHIN 180 DAYS FROM END OF GAME."
These disputed representations are not false. They refer to the period mandated by statute for redeeming winning tickets and for claiming the prizes won instantly on scratch-off tickets. Unlike a second-chance promotion drawing in which a prize may be awarded to an alternate, prizes for scratch-off tickets are bearer instruments in which the player determines instantly whether he or she has won. They must be claimed within the statutorily prescribed 180-day period or become unclaimed prizes. KRS 2 154A.110(2)(e).
However, the disputed phrases do not apply to players claiming a prize won through a second-chance promotion ("FTP") conducted with non-winning scratch-off tickets. The "FTP" promotion drawing was governed by separate "FTP" promotion rules. The front portion of Bailey's scratch-off ticket advised that players who did not uncover an instant win on the ticket should see the back of the ticket for information pertinent to the "FTP" second-chance promotion drawing. Information at the top portion of the back of Bailey's scratch-off ticket explained that the entry deadline and drawing date would be announced only after the official end of the game and would be posted on the lottery's website and at retail locations. It advised as follows: "See official rules and regulations for the Final Top Prize Drawings for all details, requirements and restrictions." The website indicated that the second chance "FTP" promotion "will be awarded according to promotion rules" and invited players to click the screen for additional information.
Again, the promotion rules provided that "[i]f the winner cannot be reached by phone within a seven (7) business day time period, ... he or she will be disqualified, and the prize will be awarded to the first eligible alternate selected." The rules warned that "[i]f the entry is incomplete or does not comply in any other respect to the requirements set forth above, the entry will be disqualified." The deposition *309 testimony of lottery officials confirmed the lottery's written representations.
These contest rules and regulations were readily available to Bailey. The record does not support his contention that the lottery made a material misrepresentation to him regarding those rules and regulations. Consequently, the trial court did not err by concluding that the lottery was entitled to judgment as a matter of law with respect to Bailey's claim of misrepresentation.
Next, Bailey contends that language included in the certified letter to him from Janice Duvall "changed the rules of [the lottery's] promotional drawing" by altering the date for claiming his winnings from the time frame set out in the contest's rules and regulations. We disagree.
In Collins v. Kentucky Lottery Corporation , 399 S.W.3d 449 (Ky. App. 2012), we observed that the purchase of a lottery ticket is the acceptance of an offer to contract and that the terms of the contract are the rules and regulations of the lottery. Furthermore, Bailey expressly agreed to the rules and regulations of the "FTP" promotion upon entry of his non-winning tickets into the online drawing. Pursuant to the rules of the "FTP" promotion, players were required to keep their telephone number and mailing address current so that the lottery could notify second-chance winners on a timely basis. The rules provided that any drawing winner would be disqualified if the lottery could not reach him within seven business days or if any eligibility requirements were not met.
There is no dispute that Bailey failed to keep his telephone number current and that he never provided the lottery with a valid mailing address. As a result, the lottery was unable to contact him pursuant to the rules. While the lottery reserved the right to change or extend any of the dates set out in the rules, it did not reserve the right to award a prize based upon a nonqualified entry. Based upon his own acts and omissions, Bailey was properly disqualified from the drawing; the lottery did not breach the contract by refusing to award him a prize. There is no genuine issue of material fact, and the court did not err when it granted summary judgment to the lottery with respect to Bailey's breach-of-contract claim.
Finally, Bailey contends that the trial court erred by concluding that the lottery was entitled to judgment as a matter of law with respect to his claim that it had breached an implied covenant of good faith and fair dealing. He argues that the lottery did not "do everything in its power" to contact him after his scratch-off ticket was drawn as the winner because it might easily have notified him by email that he had won the second-chance drawing. Bailey contends that a jury should be empaneled "to determine which of the respective parties to the contract at issue acted in good faith in the whole transaction." Again, we disagree.
Within every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties a duty to do everything necessary to carry them out. Farmers Bank & Trust v. Willmott Hardwoods , 171 S.W.3d 4 (Ky. 2005). An implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights. Id. The lottery did not breach the implied duty of good faith and fair dealing. Bailey failed to comply with the requirements of the lottery's promotion, and the lottery had a contractual right to disqualify his entry from the drawing. It had no duty to contact Bailey by email because email was not a prescribed mode of notification under the governing promotion rules.
*310 We affirm the judgment of the Jefferson Circuit Court.
ALL CONCUR.