RENDERED:  SEPTEMBER 24, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0832-MR

OLD HENRY HEALTHCARE REAL
ESTATE, LLC                                                                   APPELLANT


v.          APPEAL FROM JEFFERSON CIRCUIT COURT
            HONORABLE MITCH PERRY, JUDGE
            ACTION NO. 17-CI-006805


JEWISH HOSPITAL & ST. MARY'S
HEALTHCARE, INC.                                                            APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Old Henry Healthcare Real Estate, LLC (Old Henry),

appeals from the Jefferson Circuit Court's grant of summary judgment to Jewish

Hospital & St. Mary's Healthcare, Inc. (Jewish Hospital), regarding Old Henry's

claim that Jewish Hospital breached its contract regarding Old Henry's right of

first opportunity to repurchase property Old Henry previously sold to Jewish

Hospital.  Because Old Henry never negotiated to buy the property during the period of its right of first opportunity, it could not establish that Jewish Hospital did not negotiate in good faith.  Therefore, summary judgment was appropriately granted to Jewish Hospital.

The core relevant facts are essentially uncontested.  In 2011, Old Henry sold about thirty acres of land in Jefferson County, Kentucky, to Jewish Hospital for roughly $420,000 per acre.[1]  The sale was subject to the following restrictions:

> A.  If Jewish Hospital elects to allow any of the property . . . to be sold or developed for a non-clinical use, Jewish Hospital will give Old Henry Real Estate written notice sent by certified mail . . . ("Jewish Hospital ROFO Notice") of such intention, and Old Henry Real Estate shall have a one time right of first opportunity (the "Old Henry Right of First Opportunity") to purchase or to develop such property.  Within five (5) business days of such notification (the "ROFO Deadline"), Old Henry Real Estate shall notify Jewish Hospital in writing . . . that Old Henry Real Estate elects to exercise its Right of First Opportunity. . . .  In the event Old Henry Real Estate exercises its Right of First Opportunity, Jewish Hospital shall negotiate exclusively with Old Henry for thirty (30) days to reach agreement on the purchase price to be paid by Old Henry Real Estate or the development plans to be utilized by Old Henry Real Estate[.] . . .  If the parties have not fully executed a contract of sale or development contract within such period (the "ROFO Negotiating Deadline"), Jewish Hospital shall be free to sell the applicable property to a third party or to have the

---

[1] By agreement, the deed was not issued for several years after the sales terms were reached.

applicable property developed by a third party, subject to the Old Henry Right of First Refusal[.]

B. Subsequent to the ROFO Negotiating Deadline, if Jewish Hospital makes or receives an offer acceptable to Jewish Hospital to sell or purchase the applicable property to a third party or otherwise makes or receives an offer acceptable to Jewish Hospital to allow a third party to develop the applicable property (the "Third Party Offer"), Jewish Hospital shall give Old Henry Real Estate written notice of the terms and conditions of such offer(s), and Old Henry Real Estate shall thereafter have the right to purchase or develop, as applicable, the applicable property upon the same terms and conditions as set forth in the applicable Third Party Offer[.]

In 2017, it became known that Jewish Hospital's parent company had placed most of its Louisville assets for sale, though the property at issue was not then for sale. Old Henry's representative, Kevin Cogan, met with Jewish Hospital officials and reminded them of Old Henry's rights. About two months later, Old Henry's attorney sent Jewish Hospital a letter offering to buy the property for $120,000 per acre. Roughly a week later, Jewish Hospital sent a response stating that it did not intend to sell the property but was aware of Old Henry's contractual rights.

Meanwhile, Jewish Hospital was debating whether to sell the property and had engaged in discussions with a real estate broker, CBRE. CBRE prepared a broker's opinion of value for the property of $400,000 to $425,000 per acre. And,

at some point, Jewish Hospital had received at least one unsolicited offer to buy the property for more than double the per acre amount offered by Old Henry.

In early November 2017, Jewish Hospital sent a letter to Old Henry and its counsel stating that Jewish Hospital intended to sell the property and inquiring whether Old Henry wished to exercise its right of first opportunity. That letter from Jewish Hospital did not contain a proposed sales price. Old Henry soon responded that it wanted to exercise its right of first opportunity. Old Henry's letter did not contain a proposed sales price; instead, it merely asked Jewish Hospital to contact Old Henry's attorney "so that we may commence in good faith the negotiations[.]"

Jewish Hospital entered into an agreement with CBRE to make it Jewish Hospital's sales agent for the property, but the property was not listed on the open market. A November 21, 2017, letter from CBRE to Jewish Hospital memorializing their agreement notes that the property would have an initial listing price of $400,000 per acre.

On November 29, 2017, CBRE sent Old Henry and its counsel a letter stating that CBRE represented Jewish Hospital in the right of first opportunity "negotiations" and CBRE had "determined that the fair market value for the Property is $410,000.00 per acre." The letter did not specifically ask for counteroffers, instead it closed by stating "[i]f you are interested in purchasing the

-4-

Property at the stated offer price, or have any questions about the Property, please contact the undersigned."

Cogan, on behalf of Old Henry, informally met with a representative of CBRE in early December 2017, but apparently only generalities were discussed, and Cogan did not make any counteroffers. On December 19, 2017, CBRE sent Old Henry and its counsel another letter opining that "the market does not support selling the property for $120,000 per acre at this time." That letter also stated that "[a]s a courtesy to Old Henry," Jewish Hospital was willing to extend the thirty-day exclusive negotiations window under the right of first opportunity until December 31, 2017. *Id.* The letter asked Old Henry and its counsel to contact CBRE "as soon as possible to continue the good faith negotiations[.]" *Id.*

But the next contact from Old Henry to Jewish Hospital came on December 21, via the filing of this lawsuit. Old Henry's complaint characterizes the November 29, 2017 letter from CBRE as an ultimatum, stating that Jewish Hospital would only sell the property for the per-acre price listed. Old Henry argues as a result "no negotiations were undertaken, even though Old Henry attempted to negotiate with Jewish Hospital in good faith." Old Henry alleged Jewish Hospital had not honored the right of first opportunity and had not negotiated in good faith.

In addition to filing its answer, in January 2018, Jewish Hospital sent a letter to Old Henry and its counsel stating that "to avoid long and needless litigation" Jewish Hospital was "putting its $410,000 [per acre] offer back on the table, and will engage in exclusive negotiations with you [Old Henry] for the sale of the Property for the next thirty (30) days. . . . Accordingly, the ball is in your court to either accept Jewish Hospital's $410,000 offer or to make a counter proposal." However, since Old Henry alleged in the complaint that Jewish Hospital had not negotiated in good faith, Jewish Hospital asked any counteroffer to be made in writing. Cogan responded via a letter saying he had "several ideas about how the property might be developed, and would love to sit down with you and discuss these ideas in detail." But Old Henry never made a counteroffer.

Jewish Hospital filed its first motion for summary judgment in February 2018; the circuit court ordered the parties to attend mediation, which proved to be unsuccessful. The circuit court then denied the motion and discovery ensued.

Jewish Hospital filed its second motion for summary judgment in January 2019. The circuit court granted the motion a few months later, explaining that the record "establishes as a matter of law that Jewish Hospital's actions were taken in good faith, and that it was actually Old Henry that refused to negotiate. . . .

The Court finds that Jewish Hospital did exactly what the deed restrictions required of it." Old Henry then filed this appeal.

As an initial matter, Jewish Hospital correctly notes that the argument section of Old Henry's opening brief fails to contain the preservation statements required by Kentucky Rule of Civil Procedure (CR) 76.12(4)(c)(v). However, though we caution counsel to comply scrupulously with the applicable rules governing briefs in the future, we decline to impose any sanctions because Jewish Hospital has not shown (or even directly argued) that Old Henry's core arguments on appeal were not preserved. And even a cursory glance at the record shows that the issues before us are essentially the same as those contested in circuit court.

We now turn to the propriety of granting summary judgment to Jewish Hospital. Under Kentucky's familiar standards:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue.

*Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky.App. 2018).

In other words, "to avoid summary judgment, the party opposing its entry [Old Henry here] must present at least some affirmative evidence to show that there exists a disputed issue of material fact to be resolved at trial." *Bailey v. Kentucky Lottery Corp.*, 542 S.W.3d 305, 307 (Ky.App. 2018). In determining the propriety of granting summary judgment, "[w]e must also view the record in a light most favorable to the nonmoving party and resolve all reasonable doubts in that party's favor." *Peterson v. Foley*, 559 S.W.3d 346, 348 (Ky. 2018).

We begin our analysis with the question at the heart of this appeal: Did the circuit court err when it granted summary judgment to Jewish Hospital? Old Henry's vehement arguments to the contrary notwithstanding, the answer is no.

The crux of Old Henry's argument is that Jewish Hospital violated the covenant of good faith and fair dealing which is implicit in all contracts. *Bailey*, 542 S.W.3d at 309. That covenant "embraces, among other things, an implied obligation that neither party will do anything to injure or destroy the right of the other party to receive the benefits of the agreement." 23 WILLISTON ON CONTRACTS § 63:22 (4th ed. 1993). In short, "contracts impose on the parties a duty to do everything necessary to carry them out." *Bailey*, 542 S.W.3d at 309.

Of course, the implied covenant of good faith and fair dealing "does not prevent a party from exercising its contractual rights." *Id.* "[T]here is a

presumption that all parties act in good faith[.]"  23 WILLISTON ON CONTRACTS § 63:22.  Thus, "bad faith cannot be inferred from the expected course of business, that is, from the parties performing under the contract as the contract requires them to do."  *Id.*  Consequently, "there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract."  *Id.*

We recognize that, as a general abstract principle, "whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case and is ordinarily a question of fact to be determined by the jury or other finder of fact."  *Id.*  The specific germane facts at hand, however, are not subject to reasonable dispute.

An analysis of whether a party complied with its contractual obligations must begin with scrutinizing the contract at issue.  Here, the right of first opportunity clause required Jewish Hospital to do only two discrete things.  First, it had to send written notice of its intent to either sell or allow the property to be developed for a non-clinical use to Old Henry.[2]  It is undisputed that Jewish

---

[2] At times, Old Henry seems to be arguing that it, not Jewish Hospital, had the right to choose whether to buy or develop the property.  However, the right of first opportunity clause only applies "[i]f Jewish Hospital *elects* to allow any of the property . . . to be sold or developed for a non-clinical use[.]"  (Emphasis added.)

Hospital complied with that obligation. Old Henry was then obligated to respond in writing as to whether it intended to exercise its right of first opportunity. Again, it is undisputed that Old Henry satisfied that obligation.

Second, the only other obligation imposed upon Jewish Hospital under the right of first opportunity was to "negotiate exclusively with Old Henry" for thirty days to try to "reach agreement on the purchase price[.]" Jewish Hospital, via its agent CBRE, sent a letter to Old Henry offering to sell the property for $410,000 per acre. Old Henry never counteroffered. Therefore, the lack of negotiations lies at the feet of Old Henry, not Jewish Hospital.

Old Henry argues, essentially, that Jewish Hospital violated the implied covenant of fair dealing and good faith by asking too much for the property. But we do not perceive any actionable lack of good faith by Jewish Hospital.

The restrictions do not require Jewish Hospital to obtain an appraisal prior to offering the property to Old Henry. The restrictions do not require Jewish Hospital to offer the land at any specific price. For example, the restrictions could have required Jewish Hospital to offer the property to Old Henry at the price an independent appraiser assigned the land. We will not "add terms not included by the parties." *Snowden v. City of Wilmore*, 412 S.W.3d 195, 208 (Ky.App. 2013). Accordingly, the restrictions give Jewish Hospital the discretion to choose an

-10-

initial asking price. No bad faith can be demonstrated from Jewish Hospital setting an initial asking price higher than Old Henry believes was reasonable.

An initial asking price simply allows a starting place for negotiations, nothing more. Jewish Hospital had no obligation to set its initial asking price at the price it was willing to sell the property, or to set its initial asking price for Old Henry at the same asking price it planned to list the property, or to even offer any initial asking price at all. Instead, Jewish Hospital apparently provided an initial asking price which was tied to the broker's valuation in an attempt to demonstrate that the price Old Henry had offered earlier (before Jewish Hospital was willing to sell the property) was outside the range it would consider. We cannot know for sure the final sales price Jewish Hospital would have been willing to accept because Old Henry never negotiated.

All the right of first opportunity required of Jewish Hospital was to offer the property exclusively to Old Henry for thirty days. Jewish Hospital did so. A party cannot be deemed to have broken its implied duty of good faith and fair dealing by taking acts permitted by the contract. *Bailey*, 542 S.W.3d at 309.

And, crucially, for reasons it has never sufficiently explained, Old Henry made *no counteroffers whatsoever*. It is peculiar for a party who declined repeated entreaties to negotiate to later claim the other party refused to negotiate. Maybe Jewish Hospital would have insisted on the price it offered, or maybe it

would have accepted a substantially lower price.  We cannot know because Old Henry never took *any steps whatsoever* to find out.

If Old Henry believed the sales price to be grossly inflated, it could have waited and exercised its right of first refusal.  That clause, after all, only was triggered if the parties could not agree on a sales price during the thirty-day right of first opportunity window and then only if Jewish Hospital agreed to accept an offer from a third party.  *See* 3 CORBIN ON CONTRACTS § 11.3 (2021) (explaining that "the right [of first refusal] is subject to an agreed condition precedent, typically the owner's receipt of an offer from a third party and the owner's good-faith decision to accept it.").

Thus, there is an implicit understanding that Old Henry would be able to buy the property at fair market value pursuant to the right of first refusal clause.  If Old Henry was correct that Jewish Hospital's valuation was too high, the market would have demonstrated Old Henry's wisdom to Jewish Hospital.  After all, the best way to determine a fair market price for anything is to see what a buyer is willing to pay.  But Old Henry short circuited the process envisioned by filing suit before Jewish Hospital had the opportunity to try to sell the property to others.

Of course, Jewish Hospital was entitled to summary judgment on any claims by Old Henry based upon Jewish Hospital's allegedly violating the right of first refusal because the conditions precedent to that clause being triggered were

not allowed to occur since Old Henry filed this action before Jewish Hospital was able to seek, and accept, any offers from third parties. In other words, this action is premature and unripe as to any claims that Jewish Hospital violated the right of first refusal clause.

Finally, we find no error in the trial court's requiring Old Henry to release its *lis pendens* filed pursuant to Kentucky Revised Statute (KRS) 382.440. Old Henry's *lis pendens* did not create a lien against the property. *Strong v. First Nationwide Mortg. Corp.*, 959 S.W.2d 785, 788 (Ky.App. 1998). Instead, the purpose of a *lis pendens* is "to give notice to subsequent purchasers of a cloud on the title and to warn creditors of the need to seek other sources of security for their debts." *Id.* Here, however, the entirety of Old Henry's action was resolved in favor of Jewish Hospital. Old Henry still enjoys the right of first refusal but has no current reason to keep a cloud on the title of the property.[3]

We deem all other arguments made by the parties to be redundant, irrelevant, or unnecessary for a proper resolution of this appeal.

For the foregoing reasons, the Jefferson Circuit Court's grant of summary judgment to Jewish Hospital & St. Mary's Healthcare, Inc. is affirmed.

---

[3] This conclusion is consistent with *Wood v. MEW Providential Tr.*, No. 2015-CA-000265-MR, 2017 WL 5045611, at *2 (Ky.App. Nov. 3, 2017) (unpublished), in which we also rejected the argument, albeit without explanation, that the *lis pendens* should not have been ordered to be released prior to the conclusion of the appellate process.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Donald L. Cox
William H. Mooney
Louisville, Kentucky

BRIEF FOR APPELLEE:

Byron E. Leet
Christopher W. Brooker
Sean G. Williamson
Louisville, Kentucky